UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN RE EXTRADITION OF TIVON
BRADSHAW TO CANADA.

**OPINION**

MISC. 09-854 (VVP)

------------------------------------------------------------x

Pursuant to the Extradition Treaty between the United States of America and the Government of Canada (the "Treaty"),[1] Canadian authorities seek the extradition of Tivon Bradshaw (hereinafter the "defendant") to face murder charges in Canada. Following his arrest on a provisional arrest warrant on September 30, 2009, the Canadian government timely submitted evidence in support of the extradition request as contemplated by the Treaty. It is the court's task to determine whether the evidence is "sufficient to sustain the charge under the provisions of the . . . treaty." 18 U.S.C. § 3184. Generally speaking, extradition is warranted if (1) the judicial officer who conducts the extradition proceedings has jurisdiction, (2) the offense charged is extraditable under the terms of the treaty, and (3) there is sufficient evidence to support a finding of probable cause. *Austin v. Healey*, 5 F.3d 598, 600 (2d Cir. 1993) (*citing Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Ahmad v. Wigen*, 910 F.2d 1063, 1064 (2d Cir. 1990)).

The defendant raises no issue as to the first two elements above. Section 3184 expressly permits magistrate judges to conduct extradition proceedings when authorized by a district court, and this court expressly authorizes magistrate judges "to exercise the jurisdiction set forth in 18 U.S.C. § 3184." Local Crim. R. 58.1. Similarly, under article 2 of the Treaty and the schedule

---

[1] The treaty was initially signed on December 2, 1971 and, after several amendments, entered into force on March 22, 1976.

annexed to the Treaty, murder is an extraditable offense under the Treaty.[2]  The only challenge to extradition offered by the defendant is an argument that the evidence submitted by Canada does not establish probable cause that he committed the murder with which he is charged.

The defendant's attack on probable cause centers on the absence, in the submissions made by the Canadian government, of any details concerning the composition of the photographic lineups that were displayed to the witnesses who identified the defendant as the perpetrator of the murder.  The defendant argues that without such information the identifications of the defendant by the various witnesses who gave statements to investigators lack sufficient reliability to establish probable cause that he committed the crime.

The argument overlooks the considerable evidence that corroborates the eyewitness identifications of the defendant.  Specifically, videotaped statements given by three independent witnesses provide ample probable cause to believe he committed the murder for which extradition is sought.  The statements are recounted in an affidavit submitted by Donald Lemieux, a detective with the Montreal Police Department who is the primary investigator of the murder.  Two of the statements were given by people who had met the defendant well before the murder and who knew him as a friend.

One of the eyewitnesses, Emilie Deslandes, had met the defendant some seven months prior to the murder and knew him under the name "Jason Smith."  On the night of the murder, she saw "Smith" at the bar where the murder occurred.  As she was leaving the bar, she heard

---

[2]Under article 2(1), to be extraditable an offense must be listed on a schedule annexed to the Treaty and must be punishable under the laws of both the United States and Canada by a term of imprisonment exceeding one year.  Murder is the first offense listed on the schedule, and there is no question that the laws of both countries make that offense punishable by more than a year in prison.

gunshots and immediately saw "Smith" fleeing. She added that "Smith" always wore a chain around his neck with a medallion bearing the inscription "Dexter," and drew a picture of the medallion. In a photographic lineup conducted five days after the murder, she identified a photograph of the defendant as the man she knew as "Smith."

A second eyewitness, Shelly Mary Holmes, was also at the bar on the evening of the murder and saw both the defendant and the victim. During the course of the evening, she observed the victim and another man approach the defendant and take from him a chain with a medallion. She saw that the victim possessed two handguns at the time. Later, she overheard the defendant speaking with another individual at the bar about obtaining a handgun and overheard the defendant in a telephonic conversation also seeking to obtain a handgun. In both conversations, she overheard the defendant say that the purpose for obtaining a weapon was to kill the victim. Later, outside the bar, she saw the defendant shoot the victim five times. Holmes picked the defendant out of a photographic lineup conducted ten days after the murder and identified him as the shooter.

A third witness, John Cambridge, was not an eyewitness but had known the defendant for ten years prior to the murder and was an earwitness to the gunshots that killed the victim. According to Cambridge, just prior to the murder he received a telephone call from a mutual friend of his and the defendant's named Clark, and was talking to Clark when the defendant interrupted the conversation by getting on the phone and telling Cambridge he intended to "do it." Although Cambridge did not initially understand what the defendant meant, when Clark resumed the telephonic conversation he explained that the defendant had been assaulted by several people including the ultimate victim, who had taken a chain and medallion bearing the

inscription "Dexter" from the defendant. Clark went on to explain that the defendant had made a telephone call to another individual who had come to the bar and had provided the defendant with a handgun. It was during this telephone conversation with Clark that Cambridge heard the gunshots that killed the victim. Later, the defendant himself came to Cambridge's home and confessed to the shooting, describing how he shot the victim six times. Cambridge too identified the defendant in a photo lineup conducted eight days after the murder.

Finally, the report of the pathologist who conducted the autopsy on the victim noted the presence of a chain and medallion with the inscription "Dexter." The chain and medallion thus corresponds to the chain and medallion that the eyewitness Deslandes said the defendant always wore, that the eyewitness Holmes said she saw the victim take from the defendant, and that the earwitness Cambridge was told by Clark to have been part of the assault that motivated the defendant to commit the murder.

The ample evidence described above tying the defendant to the crime eliminates any concern about the reliability of the photographic identification procedures that may have been used. In view of the fact that the witness Cambridge had known the defendant for ten years, had spoken to the defendant on the night of the murder, and had met him between the time of the murder and his statement to the police eight days later, there is little danger that he misidentified the defendant. Even if the photographic identification consisted of the presentation of a single photograph of the defendant – which is unlikely given the statement in the investigator's affidavit that the procedure was a lineup and not a showup – Cambridge's prior, long-time relationship with the defendant eliminates the possibility that such a procedure would be improperly suggestive. Similarly, although she had not known the defendant as long as

-4-

Cambridge, the fact that the eyewitness Deslandes had known the defendant for some seven months, albeit under a different name, substantially reduces any concerns about the reliability of her identification of the defendant from a photograph, regardless of the procedure that was used.

Moreover, the correlation between and among Cambridge's statement and the statements of the two eyewitnesses corroborates the identifications given by those eyewitnesses. For example, Cambridge's statement that the defendant had been assaulted by the victim and others who had stolen the chain and medallion from him corresponds closely to Holmes's statement that she saw several people, including the victim, accost the defendant and take a chain and medallion from him. Similarly, Deslandes's statement that she knew the defendant to wear a chain and medallion with the inscription "Dexter" corresponds to Cambridge's statement describing an identical chain and medallion. And of course the presence of the chain and medallion with that inscription in the possession of the victim when he was found after the murder corresponds with, and corroborates, the statements made by all three witnesses. In view of all of the corroborating circumstances disclosed in the statements given by the various independent witnesses, the procedures by which they all identified the defendant from a photograph (they all identified him from the same photograph) is not particularly significant in gauging the reliability of the identifications.

The defendant cites *In re Extradition of Chavez*, 408 F. Supp. 2d 908 (N.D. Cal. 2005), for the proposition that defendants in extradition proceedings are entitled to obtain information about, and to challenge, the identification procedures used by law enforcement. That decision states no such general principle. Indeed, the court there recognized that "there is no *per se* rule that specifies which identification procedures are 'competent' for probable cause purposes." *Id.*,

408 F. Supp 2d at 914 (*quoting Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986)). As noted by the court in *Chavez*, the reliability of an identification is to be determined on the basis of the totality of the circumstances. *Chavez*, 408 F. Supp 2d at 914 (*citing Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). Here, the totality of the circumstances leave little doubt about the reliability of the identifications of the defendant as the perpetrator of the murder for which his extradition is sought.

For the foregoing reasons, the defendant's challenge to his extradition is rejected. The government shall provide a form of certification of extradition to be submitted to the Secretary of State for signature by the court by the close of business on Monday, January 25, 2010.

**SO ORDERED:**
*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
　　　January 21, 2010